**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON CIVIIL**
**ACTION NO.5:12-cv-00296-KSF**

| | |
|---|---|
| **PHILLITA JILL AMMONS, Administrator of** : <br> **the Estate of SOPHIA AMMONS** : <br> : <br>     **Plaintiff,** : <br> : <br> **VS.** : <br> : <br> : <br> **NORFOLK SOUTHERN CORPORATION** : <br> **and** : <br> **JOHN DOE DEFENDANT** : <br> : <br>     **Defendants.** : <br> : | **Judge Karl S. Forester** |

<u>**DEFENDANT'S BRIEF IN SUPPORT OF SUMMARY JUDGMENT**</u>

Comes now the defendants, Norfolk Southern Railway, and its employees and moves this Court for a summary judgment as a matter of law pursuant to Fed. Rule of Civil Procedure, 56. There are no genuine issues of material fact created as to the allegations of the plaintiff's complaint, and therefore, Summary Judgment is appropriate in this matter in which the plaintiff's decedent drove her vehicle into the side of a moving train.

**I.**    <u>**FACTUAL BACKGROUND:**</u>

On October 15, 2011, Sophia Ammons was driving on Bohon Road in Harrodsburg, and drove directly into the side of a Norfolk Southern train headed westbound through the Bohon Road Crossing.  Plaintiff argues only that the whistle wasn't sounded properly under KRS 277.190 and that the warnings had failed on prior occasions.

The only eye witnesses to this accident were the train crew.  They have testified

1

that the whistle was sounded, and that the flashing lights at the crossing were operating normally on the day of the accident.  (Campbell depo, pg. 58, 89, 90), (Chilcote depo, pg. 41). This testimony is uncontested.

## II.   SUMMARY JUDGMENT STANDARD:

In a diversity action such as this, the court looks to federal, not state, law for its summary judgment standard. In federal courts, summary judgment as a matter of law is proper only where there exists no genuine issue of material fact. FED. R. CIV. P. 56 (c). This court, sitting in diversity, is not bound by Kentucky's "impossibility" standard but rather must simply construe the evidence and draw all reasonable  inferences in favor of the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), This Court is obligated to  determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party bearing the burden of proof on a particular issue - regardless of whether he is the movant or non-movant - cannot rely on mere allegations or conclusory statements, however. See Maki v. Laakko, 88 F.3d 361, 364 (1996). He must point to in the record, or proffer, actual evidence. Id. What's more, the relied upon evidence must be "of an evidentiary quality that demonstrates the existence of a genuine issue of material fact." Bailey v. Floyd County Bd. of Educ., 106 F.3d 135, 145 (6th Cir. 1997)(emphasis added). To be of evidentiary quality, "[t]he proffered evidence need not be in admissible form, but its content must be admissible." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)(emphasis in

original omitted)). Against that well-established standard, this Court is urged to consider the defendant's motion for summary judgment on all counts of the complaint.

### III.   DUTIES OF NORFOLK SOUTHERN:

To establish an actionable negligence claim against the defendants, a plaintiff must establish the traditional common-law elements of negligence, which includes the existence of a duty, breach of that duty, causation, and damages.   Helton v. Montgomery, 595 S.W.2d 257 (Ky.1980).   A legal duty may be found in the common law, in a statute, or in an ordinance. Lewis v. B & R Corp., 56 S.W.3d 432 (Ky. App. 2001).

More specifically to this matter, the duties charged to the railroad industry at a public crossing in the Commonwealth are set out by statute as follows:

(1) To keep a lookout ahead for persons or vehicles on or about to pass through the crossing or approaching it so closely as to be in danger of a collision;

(2) To have the train under reasonable control;

(3) To exercise ordinary care generally to avoid collisions with persons or vehicles using the crossing.

(4) To operate at a speed no greater than is reasonable and prudent under the circumstances;

 (5) And, to sound the train's horn or whistle as it approaches a crossing pursuant to KRS 277.190.  Palmore's Kentucky Instructions to Juries, Section 25.03.  Turning to each of those duties, the Court can readily determine from the evidence acquired that there has been no violation of Norfolk Southern's duties, owed to this plaintiff:

**1) To keep a lookout ahead for persons or vehicles on or about to pass through the crossing**

It is evident from the testimony of the Engineer and the Conductor of the train in question that these employees adhered to the duties noted above as this train traveled its route on October 15, 2011.  Engineer Campbell has testified he saw the Ammons vehicle coming and it hit the side of the locomotive. (Campbell depo, pg. 85-86). Though there was no time to avoid the accident, the fact that the engineer did see the vehicle in the moments before the accident took place is indicative that they were keeping a lookout ahead of their train in satisfaction of the duty noted above.  There is no evidence offered by the Plaintiff that the crew violated the lookout duty.

**2) To keep the train under reasonable control and 3) To operate with ordinary care**

The Engineer and Conductor had often traveled this route.  The train was operating below the speed limit as it approached the Bohon Road crossing and the train's whistle was sounded well in advance of the crossing as it approached. (Campbell depo, pg. 89-90).  It is clear that this train was being operated under reasonable control under the stated conditions and with ordinary care being given to avoid collisions   There is no evidence offered by the Plaintiff that the crew violated the duty of reasonable control or the duty to operate under ordinary care.

**4) To operate at a speed no greater than is reasonable and prudent under the circumstances**

Train speeds are dictated by federal regulation.  The speed limits are set by the classification of track.  The track in the area of the Bohon Road crossing is Class 4

4

track, and has a federal speed limit of 60 miles per hour.  49 CFR § 213.9 (a).  At the time of this collision, the train was traveling at 40 mph, as indicated by the event recorder.  (Driskell depo, pg. 58).  Therefore, the train was being operated at a per se reasonable and prudent speed under the circumstances.  There is no contrary evidence to the train's actual speed at the time of collision, or the classification of track, and the federal speed limit.  There has never been an allegation by the plaintiff, or any evidence that the crew violated the speed duty.

**5)  To sound the horn as it approached the crossing.**

Finally, there is a statutory duty to sound the train's horn or whistle as it approaches a crossing.  This statute, codified under KRS 277.190, reads:  "(e)very railroad company shall provide each locomotive engine running over any of its lines with a … whistle.  The … whistle shall be sounded at a distance of at least fifty (50) rods from the place where the track crosses upon the same level any highway or crossing where a signboard is required to be maintained".

The testimony from the conductor and the engineer makes it clear that the train was in compliance with its duty set forth under KRS 277.190. It is clear that the actions detailed above were in satisfaction of the duties set forth and the Plaintiff has not contested these facts.  There is simply no evidence of a breach of any of these duties. This has already been discussed in greater detail in Defendant's Motion in Limine to which plaintiff filed no response.  However, as it is the only argument that the plaintiff has presented, of any breach of any of the Railroad's duties under KRS 277.190, we will outline the evidence on that issue in further detail.

### III.    ALLEGED FAILURE TO SOUND WHISTLE/GIVE WARNING:

Taking then the argument as to the obligation to sound the whistle, defendant did properly sound the whistle and that has been established by testimony under oath of the engineer and conductor. (Campbell depo, pg. 89-90).    In  Wadkins' Adm'x v. Chesapeake & O. R. Co., 298 S.W.2d 7(1956), the administratrix contended that the company was guilty of negligence in failing to give the required warning signals for a public crossing under Ky. Rev. Stat. Ann. § 277.190. On appeal, the court held that the administratrix did not sustain her burden of proof by more than a scintilla of evidence. The evidence in that case showed that 14 witnesses stated that the train gave adequate warning of its approach at the crossing by sounding its whistle or ringing its bell. The opposing testimony was not of sufficient probative value to have created a jury issue. Such is the case herein.

The argument of the estate in this case is that the prior alleged signal malfunctions caused Sophia to completely ignore the clear warning signals present on the date of this tragic event.  That has been addressed by defendant's Motion in Limine. Thus, the plaintiff's are left with the assertion that an alleged failure to sound a whistle, which the railroad adamantly denies, was the proximate cause of Ms. Ammons' death. However, the law is well established that such evidence, even if it is construed in a light most favorable to the plaintiff, is simply not sufficient to prove any negligence on the part of the defendant.

If we examine the evidence, (as opposed to the assertions of counsel), the plaintiff fails in their burden of establishing a failure to sound the whistle on the day in question.  The defendant has produced the sworn testimony of the engineer, Tyrone

Campbell. Mr. Campbell indicates that he blew the horn as usual, approaching the Bohon Road crossing and that he could see that the crossing lights were functioning. (Campbell depo, pg. 58, 60, 89, 90) At the last minute, he saw a car approaching on Bohon Road at a high rate of speed, and knew that the vehicle would not be able to stop. (Campbell depo, pg. 87, 88)

Similarly, the conductor, Shawn Chilcote, has confirmed that the horn was blown and that the lights were functioning. (Chilcote depo, pg. 41-42). The defendant has produced a witness, Mary Anderson, who resides at the first house nearest the railroad crossing on Bohon Road. She has confirmed that she heard the whistle blow several times prior to hearing the accident, on the day of this tragedy. (See Affidavit, Mary Anderson, Exhibit A).  In contrast, the plaintiffs have produced several affidavits but only one of them has alleged that **"she did not hear"** the railroad sound the whistle on the day of the accident (Brandy Kirkpatrick, attached to the Plaintiff's motion to compel). Even that witness does not assert that the crossing lights were not working on the day of the accident.  This single affidavit and the claims of "other day alleged failures" are simply insufficient therefore to establish any negligence on the part of the railroad on the day of the accident. Certainly, if plaintiff had any witness at all, to the claim of failure to sound the whistle or a claim of failure of the crossing lights, he would have produced that evidence by now. The matter is therefore ripe for summary judgment ruling.

The sole affidavit of Ms. Kirkpatrick asserts only failure to hear the whistle by her. That is simply not probative evidence to withstand summary judgment.  Failure to **hear** a train whistle has been held not sufficient to create a material issue of fact as to a railroad's negligence. Lintner v Norfolk Southern Ry. Co. 118 Ohio App. 3d 838, 694

N.E. 2d 140 (1997), ("testimony of a witness that he or she did not her a train sound its whistle is not probative evidence where there was positive testimony in the record by the train crew that the whistle sounded.") Nye v. Ramirez, 437 F.3d 556, (6th Cir., 2005).

To the contrary, as stated in the prior motion in limine, the Sixth Circuit Court of Appeals has ruled in a case that is truly indistinguishable to the one herein, that summary judgment is appropriate in circumstances such as these. In Ayoub v. National R.R. Passenger Corp., 76 F.3d 794 (6th Cir. 1996), the court upheld a summary judgment in favor of the Railroad defendant where the plaintiff ignored crossing warnings and drove onto the tracks. As in this case, the plaintiff's representative claimed that prior signal malfunctions at the crossing "conditioned" that driver to ignore the warning signals present that date. The U.S. District Court for the Eastern District of Michigan granted summary judgment to the railroad noting that evidence of such prior malfunctions was not even relevant when the signals were operating at the time of the accident. In regard to the summary judgment issue, the Sixth Circuit further stated that **"we fail to see a circumstance in which a plaintiff could prove that a railroad's negligence proximately caused an accident when a plaintiff has indisputably disregarded properly functioning warning signals. Id. at 796.**

Of course, numerous decisions stand for the proposition that liability cannot be imposed on a railroad when the motorists' decision to drive around properly functioning signals is the sole proximate cause of the accident. In Hamilton v. Atchison, Topeka and Santa Fe Railway Company, 530 N.E. 2d 26 (Ill. App. 1988), the plaintiff's decedent drove around a crossing gate arguing that the gates had been lowered for several minutes prior with no train in sight. Even on that occasion, when there was a claimed

8

malfunctioning on the very day in question, the court held that it is not sufficient to negate the driver's duty to exercise ordinary care on the day in question nor any substitute for the proximate cause of the collision.

Similarly, in Powell v Consolidated Rail Corp., 31 Ohio App. 3d 219, 510 N.E. 2d 818 (1986), the plaintiff alleged that the "continual and frequent malfunction of the gates ceased to warn the public at large and the plaintiff's decedent in particular of the coming of the train", and therefore was a proximate cause of the accident. The trial and appellate courts rejected this and noted that "reasonable minds could only conclude that the driving around the crossing gates was the sole proximate cause of the accident." Moreover, the evidence of such alleged malfunctioning in the past would not even be admissible on the issue of negligence on the date of this accident.

**IV.    DUTIES OF SOPHIA AMMONS:**

The driver's duties at a railroad crossing are set out by statute at KRS 189.560 as follows:  (1) The operator of a vehicle shall stop and remain standing at a railroad grade crossing when any of the following conditions exists;

> (a) a visible electric or mechanical signal device warns of the immediate approach of a railroad train;
>
> (b) a crossing gate is lowered warning of the immediate approach or passage of a railroad train;
>
> (c) an approaching train is visible and in hazardous proximity;
>
> (d) a human flagman signals the approach or passage of a train.

The uncontested evidence in this matter was that the flashing lights were operating normally on the day of the accident.  Ammons failed to stop in response to the

red flashing lights, and ran into the side of the train, which had already occupied the crossing.   Therefore, she is negligent as a matter of law, for violation of KRS 189.560(1)(a).

Numerous cases support the principle that the driver's action in entering the crossing, even <u>if</u> on any lulled sense of security or alleged inducement into a dangerous situation, does not excuse the supervening act of negligence which serves as the proximate cause of the injury.

Every driver still has a duty to keep a proper lookout. Despite all of the conspiracy theories of the plaintiff's attorney, the question before this court is what was the proximate cause of the death of this young lady?  It has been stated that "although the existence of proximate cause is often an issue for the fact finder to decide, <u>when the undisputed facts lead to only one reasonable inference, **it is** a question of law for the court to decide.</u>" <u>Lockwood v Bowman Costruction co</u>., 101 F.3d 1231, 1235 (7th cir. 1996), citing <u>Anderson v. Liberty Lobby, Inc</u>., 477. U.S. 242, 106 S.Ct. 2505(1986).

Moreover, it is not a novel or new argument that has been presented to this Court by the plaintiff in this case.  Rather, it is one that has been argued and rejected on numerous occasions in the past, dating back hundreds of years.   A driver has a duty of ordinary care, and reasonable regard for her own safety.  In spite of her legal duty to yield to the crossing, the driver in this case, clearly under the influence of drugs, proceeded to cross the tracks without ordinary care and regard for her own safety.  As the Court in <u>Powell</u>, <u>supra</u>, noted, "we conclude that she alone proximately caused her death, the death of one child and the injury to another" and "while we sincerely sympathize…reasonable minds could only conclude that she could have avoided this

10

accident by the exercise of that degree of care we are all obligated to exercise in our daily lives. Id at 821.

Similarly, the Eighth Circuit Court of Appeals, in <u>McDowell v Chicago, Milwaukee, St. Paul and Pac. R. Co.</u>, 507 F. 2d 5(8th Cir. 1974), ruled as a matter of law that this conduct by the motorist was the proximate cause.   Such evidence of  negligence that a signal operated on <u>other</u> occasions when no trains were approaching does not constitute legal excuse.  <u>Id</u>. at 7.

The Fifth Circuit Court of Appeals affirmed the trial court's grant of a directed verdict in favor of the railroad in <u>Iler v. Seaboard Airline R. Co</u>., 214 F.2d 385(5th Cir. 1954)  agreeing that the motorist's choice to ignore the flashing lights at the crossing and drive directly into the path of the approaching train was the sole proximate cause of that accident. <u>Id</u>. at 388.

In <u>Gibson v Norfolk Southern Corp</u>., 878 F.Supp. 1455(N.D. Ala, 1994), the plaintiff presented evidence as here that the alarms operated in the absence of a train on prior occasions, and that warnings were not always given. The court granted summary judgment to the railroad as <u>the motorist failed to heed the flashing lights on the day in question</u> and in the face of an oncoming train, failed to stop and look. As the Court stated, the "decedent's blatant disregard of the warning signals resulted in this tragic accident." <u>Id</u>. at 1461.

Numerous other state and federal court decisions are directly on point, throughout the country and dating back to the 1800's.  See, for example, <u>Cleary v. Philadephia and R.R. Co.</u>, 140 Pa. 19(1891); <u>Sheehan v. Philadelphia R.R. Co.</u>, 166 P. 354, 31 A. 120(1895); <u>Douglas v. Chicago M. and St. P. Rwy. Co.</u>, 76 N.W.356(1898).

<u>Hinnant v. Atl. Coast Line R. Co.</u>, 163 S.E.555(1932).  All of these cases hold that is it **no excuse** for disregarding a warning that persons are accustomed to crossing at that place when the warning has not been associated with a train.

In Kentucky,  in the case of <u>Hargadon v. Louisville & N. R. Co</u>., 375 S.W.2d 834(1963)  on appeal, the court affirmed the entry of the directed verdict in favor of the railroad because there was no room for reasonable, fair-minded men to differ on the question of whether the decedent failed to exercise ordinary care.

The defendant again comes back to the <u>Ayoub</u> decision as the most persuasive and indeed binding precedent on this court's review of the motion for summary judgment. It is respectfully submitted that <u>Ayoub</u>, <u>supra</u>, is simply  indistinguishable other than on the sole basis that <u>the plaintiff in this action does not even have any expert opinion or any factual evidence to support any claim of "conditioning the plaintiff to disregard the warning devices</u>."

Not only is the plaintiff negligent as a matter of law for failing to abide by the flashing signals, the uncontested evidence will indicate that Sophia Ammons was intoxicated at the time of this collision, in violation of KRS 189A-010.  As a part of his preparation of the death certificate, Mercer County Coroner David Ransdall withdrew blood from Ms. Ammons, and sent that blood to AIT Laboratories for a toxicology analysis.  That toxicology record indicates that at the time of her death, Ms. Ammons had blood THC concentration of 24.6 ng/ml.  The defendant has retained Gregory Davis, M.D. FCAP, Director of Forensic Consultation Services, Professor of Graduate Center for Toxicology University of Kentucky, as an expert witness in this matter.  Dr. Davis indicates that THC is the active ingredient in marijuana.  THC concentrations in

blood will peak within a subject ten minutes after smoking and decrease to less than 5 ng/ml within about two hours.  Sophia Ammons THC concentration of 24.6 ng/ml would make her clearly intoxicated on marijuana at the time of her death.  Dr. Davis goes on to describe this condition as follows:

> As the active drug THC was circulating in Ms. Ammons blood at the time of the collision, she was under the influence of and impaired by marijuana for purposes of driving a motor vehicle at that time.  Ms. Ammons blood concentration of THC indicates, as noted above, that she had ingested marijuana within two hours of the collision.
>
> The maximum psychological effects of marijuana, including but not limited to mild euphoria, distorted distance, time, and acceleration/ deceleration perception, slowed reaction time, impaired short-term memory, and a dream-like state, may last approximately four to eight hours after ingestion.  All of these effects would render a person less able to perform complex tasks such as operating a motor vehicle. (Davis Affidavit, Exhibit B).

Norfolk Southern also retained the expert services of Kenneth Agent (accident reconstructionist), and David Porta, Ph.D. (biomechanical engineering expert).   The police report in this matter indicates that Ms. Ammons was ejected from her vehicle, and her body was found next to her car.   Mr. Agent, and Dr. Porta were retained to determine whether Ms. Ammons was wearing her seatbelt, as required by Kentucky law, and whether if she had, this accident could have been survivable.  Both Agent and Porta had the opportunity to examine the vehicle after the collision, and specifically the seatbelt harness.  Both experts indicate that the seatbelt operated normally.  There was no indication from the seatbelt itself, or the safety harness that would indicate that the

seatbelt was being used at the time of the collision.   Dr. Porta indicates that when seatbelts are used in a significant front end collision, they will show damage from the heavy loading including the D ring, the webbing, the retractor, the anchors, the buckle, and the latch plate.   There was no indication from any of these components that the seatbelt was in use at the time of this collision.  (Porta report, pg. 6).

Likewise, both experts indicate that if a seatbelt had been in use, Ms. Ammons would not have been ejected from the vehicle, and been found next to the car.   (Porta Affidavit Exhibit C; Agent Affidavit, Exhibit D).

Mr. Agent indicates that based upon the amount of crush to the Ammons vehicle, that she was traveling at 35 mph at the time of the collision.  This would indicate that she did not slow her vehicle, nor was she prepared to stop at the crossing.  Dr. Porta sites crash test data which indicates that a front end collision at 35 mph, would not be expected to cause a death to the driver.

The Mercer County Coroner determined the cause of death of Sophia Ammons to be blunt force trauma to the back of head.   This is inconsistent with a front end collision, which would cause the body to fly forward into the steering wheel, and airbag. The conclusion of both Agent and Porta was that the injury to the back of the head was from a second collision suffered after she was ejected from the vehicle.   There is relatively minor damage to the front of Ms. Ammons body from the initial collision.

Porta details the crash data for the 1996 GMC Jimmy, driven by Ammons.  That data indicates that in a 35 mph collision, with the occupants properly belted, the scientific data shows that the occupants would survive.  As pointed out by Agent, the injuries suffered by persons who did not wear a seatbelt, and are ejected from the

14

vehicle, are much more severe than if they stay with the vehicle itself.   All of the evidence confirms that the plaintiff's own negligence was the sole cause of her death. Plaintiff's have no expert opinions to the contrary.   Plaintiff's own negligence therefore requires this Court to grant summary judgment as a matter of law.

### V.      VEGETATION OBSCURING THE VIEW OF THE TRAIN:

The plaintiff will contend that visibility of the train was obscured by trees and bushes, which limited Ms. Ammons opportunity to perceive and react to the presence of the train.   The fallacy with the plaintiff's argument is that she contends that she is entitled to approach the railroad crossing at 35 mph without slowing or stopping for the functioning flashing lights.   Under these circumstances, her visibility would be quite limited, however she would not have complied with her duties to stop for the flashing light, and the train which was in hazardous proximity to the crossing.   A railroad crossing is like any other intersection on the road which has traffic control devices, and the rules of the road, and right-of-ways apply.   The railroad has the right-of-way, and the motorist has the duty to yield the right-of-way to the train.   The flashing red lights at a crossing are equivalent to a red light at an intersection.   There would be no defense to a motorist who runs a red light to say that she could not see cross traffic because of adjacent trees or vegetation.   Likewise, the Estate of Ammons is not excused from her negligence by failing to stop for the flashing lights, or even apparently look for the approaching train by virtue of her claims of vegetation surrounding the crossing.   It should also be noted that much of this vegetation is located on private property, adjacent to the railroad, and not even on railroad property.

Furthermore, the undisputed evidence is that if Ammons had stopped at the

flashing red lights, as she was required to do under the law, the visibility in both directions was unlimited.  (Agent Report, pg. 2, 8).  This evidence is likewise undisputed by the plaintiff.

The Federal Railroad Safety Act (FRSA) 49 CFR 213.37 addresses the railroad's duties regarding vegetation.  Those duties are limited to the area immediately adjacent to the road bed, requiring only that the vegetation not obstruct visibility of a railroad sign and signal, or interfere with railroad employee duties.  There is absolutely no evidence in this case that vegetation was obstructing the signs or signals of the railroad.  As such, the issue of vegetation is simply a red herring.

## VI.  PLAINTIFF'S NEGLIGNECE WAS THE SOLE PROXIMATE CAUSE OF HER DEATH AND SUMMARY JUDGMENT IS APPROPRIATE:

As there was no evidence to support a claim of negligence against the defendant, the sole proximate cause of this accident were the actions of Sophia Ammons, who failed to obey Kentucky law by not stopping her vehicle at the crossing, and failing to yield the right-of-way to the train.

Even if the Court finds any scintilla of evidence of negligence on the part of the railroad, which we would dispute, it is clear that any degree of negligence would be superseded by the negligence of the driver, Sophia Ammons.  This issue was similarly addressed in Montgomery Elevator v. McCullough, 676 S.W. 2d 776 (Ky., 1984), where the Court noted that the chain of causation may be broken by any facts that are legally sufficient to constitute an intervening, superseding cause.

In the case of Carlotta v. Warner, 601 F. Supp. 749 (ED KY, 1985), the Court described the proximate cause of an injury in a situation of "slightly negligent defendant versus a profoundly negligent plaintiff".  In Carlotta, supra, the plaintiff was swimming at

16

a swimming pool maintained at his apartment complex for the use of the tenants.  The complex did have regulations which prohibited floating objects in the pool.  The plaintiff was severely injured when he dove through an airtube and suffered a spinal cord injury.  The plaintiff's theory was that the apartment complex was negligent by failing to enforce their own regulations regarding floating objects in the pool.  Obviously, however, the plaintiff was quite negligent in diving through the airtube into the shallow water.  The Court held:

> "I can only conclude that any negligence on the part of the defendant was so insignificant or negligible in relation to the plaintiff's own negligence that, as a matter of law, it may not be considered a substantial factor in causing the accident."

The exact quote of Judge Bertlesman in the <u>Carlotta</u> case could be applied to Sophia Ammons in this situation.  Any theory that the plaintiff submits regarding the defendant's negligence would have to weighed against the known actions of the plaintiff, Sophia Ammons.  The unrebutted evidence in this matter indicates that Ms. Ammons was intoxicated on marijuana.  She drove her car directly into the side of a train which was already on the crossing at the time of the collision.  She was not wearing a seatbelt, as required by Kentucky law, and she was ejected from the vehicle.  Her ejection from the vehicle caused her to have an impact to the back of her head, directly resulting in her death.  All of these facts are determined not by the actions of the railroad, but by the negligence of the plaintiff, Sophia Ammons.  The actions of Ammons would be considered to be grossly negligent.  When we couple this conduct with the fact that the law provides with the absolute right-of-way to the railroad, and the driver with the absolute duty to yield the right-of-way to the train at a crossing, there could be no

conceivable situation under which the plaintiff could prevail against the railroad, under these circumstances.  It has been uniformly determined under Kentucky law that driver who fails to yield the right-of-way to a train at a crossing is considered negligent as a matter of law.  Illinois Central Railroad Co. v. Arms, 361 S.W. 2d 506 (Ky., 1962); Vaugn v. Jones, 257 S.W. 2d 583 (Ky., 19530; and Nashville, Chattanooga & St. Louis Railroad Co. v. Stagner, 205 S.W. 2d 493, 495 (Ky., 1947).

**VII.   CONCLUSION:**

The positive testimony in this case is that the signal lights were operating as Plaintiff's decedent drove into the crossing. The Sixth Circuit has held that, despite allegations of prior malfunctions, which are not admissible, the Courts must grant summary judgment as a matter of law where these facts exist. Ayoub, 76 F.3d at 796. "We fail to see a circumstance in which a plaintiff could prove that a railroad's negligence proximately caused an accident occurring after the plaintiff undisputedly disregarded properly functioning warning signals." Ayoub, supra. In this instance, the plaintiffs actually have no witness or personal knowledge as to malfunctioning of the lights. The evidence is therefore overwhelming that the lights were fully functioning on the date of this accident and that the whistle was blown. The railroad met all of its duties by law and in the absence of countervailing evidence of negligence on the day in question, the plaintiff's claims fail as a matter of law.

Moreover, the proximate cause of the accident has been further proven by the defendant, through undisputed expert reports, from the accident reconstruction expert, Ken Agent; the report of Dr. David Porta; and the report of Dr. Gregory Davis as to the intoxication levels of the plaintiff.  Thus, summary judgment as a matter of law on all

18

counts, is appropriate at this time.

As stated previously, "although the existence of proximate cause is often an issue for the fact finder to decide, when the undisputed facts lead to only one reasonable inference it is a question of law for the court to decide." *See* District Court Memorandum and Order p. 4; <u>Lockwood v. Bowman Construction Co</u>*.,* 101 F.3d 1231, 1235 (7th Cir. 1996) (*citing* <u>Anderson v. Liberty Lobby, Inc</u>*.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed2d 202 (1986)). In this case, the undisputed facts lead to only one reasonable inference: the sole proximate cause of this accident was that Sophia Ammons failed to stop and look before crossing the train tracks. She knew it was dangerous to cross the tracks, yet did not stop or look prior to doing so and that alone is the sole proximate cause of this tragedy.

Respectfully submitted,

CETRULO, MOWERY & HICKS, P.S.C.
130 Dudley Road, Suite 200
Edgewood, KY 41017
PHONE:  (859) 331-4900

/s/ Robert B. Cetrulo
Attorney for Defendant
Norfolk Southern Corporation

## **CERTIFICATION**

I hereby certify on this the 15th day of October, 2013, I electronically filed the foregoing with the Clerk of the United States District Court Eastern District of Kentucky using the CM/ECF system which will send notification of such filing to the following:

James B. Blumenstiel, Esq.                    C. David Patrick
Aaron R. Falvo, Esq.                          321 S. Main Street
Blumenstiel, Evans & Falvo, LLC               Harrodsburg, Kentucky  40330
261 West Johnstown Road
Columbus, Ohio  43230


/s/ Robert B. Cetrulo